## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **ON CALL HOME HEALTH SERVICES, INC., d/b/a HOUSE CALLS HOMEBASED HEALTH CARE** | § § § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO. 7:17-cv-252** |
| **THOMAS E. PRICE, M.D., Secretary, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES.** | § § § § § | |
| **Defendant.** | § | |

### ORIGINAL COMPLAINT FOR MANDAMUS RELIEF

Plaintiff, On Call Home Health Services, Inc. d/b/a House Calls Homebased Health Care (hereinafter "House Calls," "Plaintiff" or the "Provider") by and through its attorneys, hereby files its Original Complaint for Mandamus Relief against Defendant, Thomas E. Price, M.D., the Secretary of the United States Department of Health and Human Services ("HHS" or the "Agency"), and would show the Court the following:

### INTRODUCTION

1.     This is a mandamus case in which Plaintiff seeks an order requiring Defendant to properly adjudicate a Medicare overpayment appeal and comply with statutory and regulatory rules concerning the use of statistical sampling and extrapolation methodology.  The provider was denied Due Process and not extended a meaningful opportunity to challenge the overpayment calculation in the administrative appeal due to

the government's failure to make available the sampling documentation setting out the methodology that was followed. Defendant withheld crucial statistical sampling information it is required to disclose in accordance with 42 C.F.R. §§405.948, 405.968(a) and 405.1042(a)(2). In as much as Defendant must properly adjudicate the administrative appeal, Plaintiff seeks an order compelling Defendant to dismiss his claim for an extrapolated $2,299,674.00 overpayment, limit recovery to the alleged *actual* overpayment totaling $190,568.35, and cease recoupment of the extrapolated overpayment. Further, Defendant must refund all wrongfully collected payments that were recouped or otherwise collected to recover the overpayment.

2.      The Medicare statute, 42 U.S.C. §1395ff(b) establishes a provider's appeal rights and ensures Due Process of law. Section 405 in Chapter 42 of the Code of Federal Regulations, 42 U.S.C. §1395ddd(f)(3), and Medicare guidelines require Defendant's contractors to follow specific protocols and document their extrapolated overpayment calculations. *See* MPIM, Pub. 100-08, Chap. 8, Sec. 8.4. Defendant's own adjudications, *see, e.g., Global Home Care, Inc. v. National Government Services*, Docket No. M-11-116, HHS, DAB (Jan. 11, 2011), hold that without the statistical sampling documentation, a provider does not have the information and data necessary to mount a Due Process challenge to the statistical validity of the sample, as is its right under CMS Ruling 86-1, and the extrapolation cannot stand.

3.      On June 30, 2010, Defendant notified Plaintiff, a home care provider

2

participating in the Medicare program, of an alleged $2,299,674.00 overpayment determined using statistical sampling. Based upon the sample of claims reviewed, the *actual* overpayment is only $190,568.35. Although sampling was used to calculate the overpayment, Defendant failed to make available essential documentation of the sampling methodology that was followed to calculate the *extrapolated* overpayment.

4.      Defendant is required to disclose and make available in the administrative record all essential statistical sampling documentation. Defendant's overpayment procedures require that when a Medicare contractor seeks to recover an extrapolated overpayment, it must include with the demand letter sampling documentation setting forth the methodology that was followed to calculate the extrapolated overpayment. Without the statistical sampling documentation, an extrapolated overpayment cannot stand. Nonetheless, Plaintiff has been forced to pursue an administrative appeal for the past seven years in which it was denied the opportunity to effectively dispute and contest the overpayment at each and every stage of the administrative process because of Defendant's failure to provide crucial sampling documentation.

5.      In fact, Plaintiff has pursued resolution at *every* stage of the 4-stage administrative process. After waiting 1534 days for Medicare Appeals Council or "MAC" review and requesting escalation to federal court, the MAC issued a decision *vacating* the ALJ's decision and remanding the case for further action. It asserted it was "taking this action because we are unable to adjudicate this case without the complete

3

administrative record." Specifically, the MAC conceded it was missing the statistical sampling frame, as well as the notes of the beneficiary interviews referenced by the ALJ, the ZPIC, and Plaintiff, and the MAC was unable to determine validity of the statistical sample and coverage of claims, as argued on appeal. Indeed, it summarized "the written record is missing information that is essential to resolving the issues on appeal and that information can only be provided by CMS or its contractors." In other words, the MAC concluded that the overpayment was not supported by the evidence.

6.    Clearly, Defendant violates 42 U.S.C. §§1395ff(b) establishing Plaintiff's appeal rights, and 1395ddd(f)(2)'s protection from premature recoupment, when the alleged overpayment is unsupported by the available sampling documentation and yet collected through recoupment. Accordingly, Plaintiff is entitled to mandamus relief and an order from this Court that requires Defendant to declare the extrapolation invalid, dismissal of the extrapolated $2,299,674.00 overpayment, as well as limits recovery to the alleged $190,568.35 *actual* overpayment. Further, Defendant should be ordered to cease recoupment and refund the collected overpayment. [1]

### PARTIES

7.    Plaintiff, On Call Home Health Services, Inc. d/b/a House Calls Homebased Health Care  (hereinafter Plaintiff, "House Calls" or Provider) a corporation organized under the laws of the State of Texas, is a State-licensed and Medicare-certified home

---

[1]    Defendant has collected $488,617.93 from Plaintiff in principal and interest. Interest was assessed at 10.875%.

4

health care provider located at McAllen, Texas.  House Calls provides home health services to Medicare beneficiaries located in the local and surrounding communities.

8.     Defendant, Thomas E. Price, M.D., is Secretary of the U.S. Department of Health and Human Services (hereinafter "HHS" or "Defendant"), an agency of the United States of America, and he may be served by delivering a copy of the summons and of the complaint to the United States Attorney for the Southern District of Texas and by sending a copy of the summons and of the complaint by certified mail to the United States Attorney of the United States in Washington, DC.  The Secretary of HHS oversees the Medicare program, and he adopts and issues the final decision made by the Medicare Appeals Council (MAC) such that the Secretary of HHS becomes the Defendant in appeals for judicial review pursuant to 42 C.F.R. §405.1136(d).

## JURISDICTION AND VENUE

9.     This action arises under the Medicare Act, a part of the Social Security Act at 42 U.S.C. §§1395 *et seq.*  Plaintiff appeals a decision of the Departmental Appeals Board Medicare Appeals Council ("MAC") issued on June 5, 2015 and a final decision of the Secretary of Health and Human Services.  *See* 42 C.F.R. §405.1130.  Additionally, the Court has supplemental jurisdiction under 28 U.S.C. §1367 over certain of Plaintiff's other claims because they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution.  Plaintiff received the final decision of the MAC on or about June 10, 2015.

Plaintiff timely files this original complaint for judicial review in federal district court in the judicial district in which Plaintiff resides on or before the expiration of sixty days from receipt of the final decision.  *See* 42 U.S.C. §1395ff(b).

10.    Plaintiff's principal office is located in Edinburg, Texas, therefore, venue is proper in the Southern District of Texas.  *See* 42 U.S.C. §§405(g) and 1395ff(b).

## APPLICABLE MEDICARE LAW

### The Medicare Program

11.    As part of the Social Security Amendments of 1965, Congress established the Medicare program:  a national health insurance plan to cover the cost of medical care for the elderly and disabled.  *See* 42 U.S.C. §1395 *et seq*.  Officially known as "Health Insurance Benefits for the Aged and Disabled," it provides basic protection against the costs of inpatient hospital and other institutional provider care.  It also covers the costs of physician and other healthcare practitioner services and items not covered under the basic program.  In 1997, beneficiaries were extended the option of choosing a managed care plan.  More recently, in 2006, the program was expanded further to include a prescription drug benefit.

### Home Health Services

12.    Medicare covers home health services furnished to beneficiaries by home health agencies participating in the program.  *See* 42 U.S.C. §1395x(m); 42 C.F.R. §409.40 *et seq*.  A provider must act on a physician's certification that the individual is

confined to the home, needs skilled nursing care on an intermittent basis or is in need of

physical or occupational therapy, or speech-language pathology service, and is under the

care of a physician who has established a plan of care. 42 C.F.R. §409.42. If the patient

does not need therapy, skilled nursing care must be needed at least once every 60 days.

*Id*.

### Payment and Audit Functions

13.    Medicare's payment and audit functions are performed by various federal

contractors. For instance, the payment of home health claims at issue in this case was

made by Palmetto GBA, L.L.C. Various other contractors, like Health Integrity, L.L.C., a

Zone Program Integrity Contractor (or "ZPIC"), investigate instances of suspected fraud,

waste, and abuse as well as identify any improper payments that are to be collected by

Administrative Contractors.

### Appeal Process

14.    Home health agencies participating in the Medicare program are entitled to

appeal the initial action. 42 U.S.C. §1395ff(b). Federal regulations establish an elaborate

administrative appeal process to review the adverse action. 42 C.F.R. Subpart I –

Determinations, Redeterminations, and Appeals Under Original Medicare. A provider

dissatisfied with an initial determination may request a Redetermination by a contractor in

accordance with 42 C.F.R. §§405.940 through 405.958. If a provider is dissatisfied with

a Redetermination decision, it may request a Reconsideration by a Qualified Independent

Contractor (or "QIC") in accordance with 42 C.F.R. §§405.960 through 405.986.  In the event the provider is dissatisfied with the Reconsideration decision, it may request an Administrative Law Judge (or "ALJ") hearing in accordance with 42 C.F.R. §§405.1000 through 405.1054.  The provider may request review of the ALJ's decision by the Medicare Appeals Council (or "MAC") in accordance with 42 C.F.R. §§405.1100 through 405.1140.   The MAC's decision is the final agency action, and it is subject to judicial review.  *See* 42 U.S.C. §1395ff(b)(11); 42 C.F.R. §§405.1130, 405.1132, 405.1134. *See also* 42 U.S.C. §405(g).

## CONDITIONS PRECEDENT

15.    All conditions precedent have been performed or have occurred.

## FACTS

16.    On Call Home Health Services, Inc. d/b/a House Calls Homebased Health Care provides skilled nursing services and other therapeutic services to those individuals certified by medical doctors as homebound and in need of home health care.  All services provided by House Calls were performed in accordance with doctors' orders and plans of care prepared by registered nurses in conjunction with physicians' orders.

### Initial Determination

17.    On June 30, 2010, Health Integrity, L.L.C., the Zone Program Integrity Contractor ("ZPIC"), determined a $2,299,674.00 Medicare overpayment for services dated August 1, 2007 through August 1, 2009.  The ZPIC reviewed 58 of 1,122 claims

8

and determined an actual overpayment of $190,568.35. Utilizing statistical sampling and extrapolation, the ZPIC extrapolated the audit results and determined a Medicare overpayment of $2,299,674.00. According to the ZPIC, the overpayment was primarily based upon Medicare beneficiaries not being homebound and skilled services not being medically reasonable or necessary. In making this determination, only 58 claims were audited out of 1,122 claims submitted over a two and one-half year period. The contractor found that in 15 of the 58 claims met Medicare coverage criteria for homebound status and skilled services. It found that 12 claims were denied due to the beneficiary not being homebound. Thirty-one claims were denied due to the beneficiary not having a qualified skilled need at the time of services. Enclosed with the Health Integrity notice was a Postpay Medical Review Spreadsheet setting forth the dates of service and the reason code for denials of all or part of the payments that had been previously made to the provider for these services.

18. On July 14, 2010 Palmetto GBA, L.L.C. formally notified Plaintiff of a $2,229,674.00 Medicare overpayment.[2] According to the notice, the overpayment was based upon a post-pay investigation conducted by Health Integrity, L.L.C. and the Medicare overpayment determination issued on June 30, 2010. The notice, however, was not accompanied by essential statistical data used to calculate the overpayment, nor did it

_____

[2]     There is a discrepancy between the $2,299,674.00 overpayment amount calculated by the ZPIC and the $2,229,674.00 overpayment noticed by Palmetto GBA, the Medicare Administrative Contractor.

include critical evidence regarding the audit. Defendant withheld crucial statistical sampling information it is required to disclose in accordance with 42 C.F.R. §§405.948, 405.968(a) and 405.1042(a)(2). This notice informed the Provider of its administrative appeal rights.

**Redetermination**

19.     On or about August 11, 2010, Plaintiff requested a Redetermination of the overpayment determination pursuant to 42 C.F.R. §405.940 *et seq*., that disputed and contested the overpayment determination.

20.     Plaintiff contested the Medicare overpayment determination alleging, among other things, that the ZPIC failed to properly apply the statute and regulations in making its decision that claims should be denied, that financial liability should be waived, and that the statistical sampling was invalid and extrapolation lacked proper support.

**Decision**

21.     A partially favorable Redetermination decision was issued on October 5, 2010.

22.     Although some claims were determined favorably, the redetermination decision improperly adjudicated most of the individual claims improperly, and it found that the challenge to the statistical sampling and extrapolation of the overpayment was unfavorable.

23.     Further, the Redetermination decision when issued did not include the

10

recalculated amount of the overpayment, and Plaintiff was required to go forward with its appeal without knowing the amount of the actual overpayment or the extrapolated overpayment amount.

24.     Further, Defendant's failure to adjudicate the Redetermination decision in accordance with the requirements of 42 C.F.R. §405.950 *et seq*., or determine the individual claims or to calculate the overpayment utilizing a proper statistical sampling methodology and accurately extrapolate the Medicare overpayment amount, violated Plaintiff's right to Due Process of law under the Fifth and Fourteenth Amendments of the U.S. Constitution.

### Reconsideration

25.     On or about March 28, 2011, Plaintiff requested Reconsideration of the overpayment determination pursuant to 42 C.F.R. §405.960 *et seq*., that disputed and contested the Redetermination decision.

26.     Again, Plaintiff contested the Medicare overpayment determination alleging, among other things, that the ZPIC failed to properly apply the statute and regulations in making its decision that claims should be denied, that financial liability should be waived, and that the statistical sampling was invalid and extrapolation lacked proper support.

### Decision

27.     A partially favorable Reconsideration decision was issued on May, 24,

11

2011.

28.     The decision was supplemented on October 17, 2011.

29.     While some claims were determined favorably, the Reconsideration decision improperly adjudicated most of the claims, and it found that the challenge to the statistical sampling and extrapolation of the overpayment was unfavorable.

30.     The Reconsideration decision when issued did not include the recalculated amount of the overpayment, and Plaintiff was required to go forward with its appeal without knowing the amount of the actual overpayment or the extrapolated overpayment amount.

31.     Further, Defendant's failure to adjudicate the Reconsideration decision in accordance with the requirements of 42 C.F.R. §405.960 *et seq*., or determine the individual claims or to calculate the overpayment utilizing a proper statistical sampling methodology and accurately extrapolate the Medicare overpayment amount, violated Plaintiff's right to Due Process of law under the Fifth and Fourteenth Amendments of the U.S. Constitution.

### ALJ Hearing

32.     On or about July 20, 2011, Plaintiff requested an Administrative Law Judge ("ALJ") Hearing and *de novo* review of the overpayment determination pursuant to 42 C.F.R. §405.1000 *et seq*., that disputed and contested the Reconsideration decision.

33.     In disputing and contesting the Medicare overpayment determination,

Plaintiff alleged, among other things, that the ZPIC failed to properly apply the statute and regulations in making its decision that claims should be denied, that financial liability should be waived, and that the statistical sampling was invalid and extrapolation lacked proper support.

### Decision

34.    A partially favorable ALJ decision was issued on October 16, 2012.

35.    The ALJ decision, when issued, improperly adjudicated the claims, and it improperly confirmed the ZPIC's statistical sampling and extrapolation of the overpayment.

36.    The ALJ decision did not include the amount of the recalculated overpayment, and Plaintiff was required to go forward with its appeal without knowing the amount of the actual overpayment or the extrapolated overpayment amount. [3]

37.    Further, Defendant's failure to adjudicate the ALJ decision in accordance with the requirements of 42 C.F.R. §405.1016 *et seq*., or determine the individual claims or to calculate the overpayment utilizing a proper statistical sampling methodology and accurately extrapolate the Medicare overpayment amount, violated Plaintiff's right to Due Process of law under the Fifth and Fourteenth Amendments of the U.S. Constitution.

### MAC Review

38.    On or about December 14, 2012, Plaintiff requested Medicare Appeals

---

[3] Subsequently, Plaintiff was informed the recalculated overpayment was $477,104.39. To date Plaintiff has paid $488,617.93 in principal and interest.

Council (or "MAC") review on the overpayment determination pursuant to 42 C.F.R. §405.1100 *et seq.*, that disputed and contested the ALJ decision.

39.    In seeking MAC review, Plaintiff contested the Medicare overpayment determination alleging, among other things, that the ZPIC failed to properly apply the statute and regulations in making its decision that claims should be denied, that financial liability should be waived, and and that the statistical sampling was invalid and extrapolation lacked proper support.

**Escalation**

40.    On February 24, 2017, in accordance with 42 C.F.R. §405.1132, Plaintiff issued notice of its intent to escalate its administrative appeal to federal court.

41.    Plaintiff informed the MAC that a request for review was filed on December 14, 2012; that it was confirmed received by the MAC on May 20, 2013, and that no decision was issued within the 90-day adjudication period specified by 42 C.F.R. §405.1100.

42.    Defendant was unable to issue a decision or otherwise act within the 5-day period under 42 C.F.R. §405.1132, however, it offered to issue an action in the administrative appeal within 60 days.

**Decision**

43.    On April 20, 2017, the MAC issued its decision *vacating* the ALJ's decision and remanding the case for further action.  The MAC asserted it was "taking this action

14

because we are unable to adjudicate this case without the complete administrative record."

44.     Specifically, the MAC conceded it was missing the statistical sampling frame, as well as the notes of the beneficiary interviews referenced by the ALJ, the ZPIC, and Defendant; therefore, the MAC is unable to determined validity of the statistical sample and coverage of claims, as argued on appeal.  Indeed, it summarized "the written record is missing information that is essential to resolving the issues on appeal and that information can only be provided by CMS or its contractors."

45.     Defendant withheld crucial statistical sampling information it is required to disclose in accordance with 42 C.F.R. §§405.948, 405.968(a) and 405.1042(a)(2).

46.     Further, Defendant's failure to adjudicate the MAC decision in accordance with the requirements of 42 C.F.R. §405.1100 *et seq*., or determine the individual claims or calculate the overpayment utilizing a proper statistical sampling methodology and accurately extrapolate the Medicare overpayment amount, violated Plaintiff's right to Due Process of law under the Fifth and Fourteenth Amendments of the U.S. Constitution.

### Extended Repayment Plan

47.     During the course of the administrative appeal, Plaintiff entered into an extended repayment plan to avoid a 100% recoupment of its Medicare payments.

48.     Defendant collected $488,617.93 in principal and interest. Defendant has assessed interest at 10.875%.

15

**Closure of Home Health Agency**

49.     Due to the financial burden and collection of the overpayment by Defendant, Plaintiff has closed its doors and ceased operating as a home care provider.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

50.     Defendant's failure to disclose the sampling documentation results in a denial of Plaintiff's Due Process rights, and it effectively deprives Plaintiff of the administrative process, and the protections under law, including the statutory protection from premature recoupment.  Indeed, making available appeal procedures that do not provide a meaningful opportunity to contest and dispute the overpayment is essentially providing "no review at all."  Defendant has violated 42 U.S.C. 1395§§ff(b) and 1395ddd(f)(2) establishing the provider's appeal rights and protection from premature recoupment of Medicare payments to collect the overpayment.  Under these facts, the administrative exhaustion requirement is excused.

**CLAIMS FOR RELIEF**

**Count 1 - Violation of Due Process of Law**

51.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

52.     The Fifth and Fourteenth Amendments to the U.S. Constitution guarantee that no person shall be deprived of life, liberty, or property without Due Process of Law.

53.     The Medicare Act, 42 U.S.C. §1395ff(b), requires Defendant to properly

16

adjudicate administrative appeals at each stage of the process and affords providers the right to a fair and consistent review.

54.     On July 14, 2010, Defendant issued a notice of the alleged extrapolated $2,229,674.00 Medicare overpayment while withholding the statistical sampling documentation, which denies to the provider its Due Process rights and a meaningful opportunity to dispute and contest the extrapolated overpayment.

55.     Plaintiff has been forced to pursue an administrative appeal for the past seven years as it was denied the opportunity to effectively dispute and contest the overpayment at each and every stage of the administrative process because of Defendant's failure to provide the documentation of the sampling methodology.

56.     Defendant's own adjudications, *see, e.g., Global Home Care, Inc. v. National Government Services*, Docket No. M-11-116, HHS, DAB (Jan. 11, 2011), hold that "[w]ithout this basic documentation, a provider does not have the information and data necessary to mount a Due Process challenge to the statistical validity of the sample, as is its right under CMS Ruling 86-1" and the extrapolation cannot stand. The failure to maintain this documentation, or its absence from the administrative record is grounds for invalidating an extrapolation. *Chaves County Home Health Svcs. Inc. v. Sullivan*, 931 F. 2d 914 (D.C. Cir. 1991), cert. denied, 402 U.S. 1091 (1992).

57.     Where Plaintiff is denied its Due Process rights to dispute and contest the extrapolated overpayment, the provider is not extended appeal rights in accordance with

42 U.S.C. §1395ff(b), and it also is deprived of the statutory protection against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

58.     Defendant has given notice it will impose recoupment of 100% of Plaintiff's Medicare payments to collect the alleged extrapolated $2,229,674.00 overpayment even though the provider has been deprived of a meaningful opportunity to challenge this calculation.

59.     As a result, Plaintiff is unable to adequately exercise administrative remedies established under the Medicare Act, and has suffered financially as a result of Defendant's illegal recoupment for which no administrative appeal rights are available.

60.     Accordingly, Defendant's issuance of the July 14, 2010 notice of the alleged $2,229,674.00 extrapolated Medicare overpayment while withholding the statistical sampling documentation violates Plaintiff's Due Process rights by depriving the provider of a meaningful opportunity to dispute and contest the overpayment.

**Count 2 - Violation of the Medicare Act**

61.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

62.     The Medicare Act, 42 U.S.C. §1395ff(b), requires Defendant to properly adjudicate administrative appeals at each stage of the process and affords providers the right to a fair and consistent review.  Medicare guidelines require Defendant's contractors to follow specific protocols and document their extrapolated overpayment calculations.

18

*See* MPIM, Pub. 100-08, Chap. 8, Sec. 8.4.   Defendant is required to disclose

information about the review and statistical sampling that was followed to calculate an

overpayment.  405 C.F.R. §405. 371;  42 U.S.C. §1395ddd(f)(3).  Defendant must include

with the demand letter sampling documentation setting forth the methodology that was

followed to calculate the extrapolated overpayment.  Without the statistical sampling

documentation, an extrapolated overpayment cannot stand.

63.    On July 14, 2010, Defendant issued a notice of the alleged extrapolated

$2,229,674.00 Medicare overpayment while withholding the statistical sampling

documentation, which denies to the provider its Due Process rights and a meaningful

opportunity to dispute and contest the extrapolated overpayment.

64.    Plaintiff has been forced to pursue an administrative appeal for the past five

years as it was denied the opportunity to effectively dispute and contest the overpayment

at each and every stage of the administrative process because of Defendant's failure to

provide the documentation of the sampling methodology.

65.    Defendant's own adjudications, *see, e.g., Global Home Care, Inc. v.

National Government Services*, Docket No. M-11-116, HHS, DAB (Jan. 11, 2011), hold

that "[w]ithout this basic documentation, a provider does not have the information and

data necessary to mount a Due Process challenge to the statistical validity of the sample,

as is its right under CMS Ruling 86-1" and the extrapolation cannot stand.  The failure to

maintain this documentation, or its absence from the administrative record is grounds for

19

invalidating an extrapolation. *Chaves County Home Health Svcs. Inc. v. Sullivan*, 931 F. 2d 914 (D.C. Cir. 1991), cert. denied, 402 U.S. 1091 (1992).

66.    Accordingly, Defendant fails to properly adjudicate the overpayment appeal when no statistical sampling documentation is produced in violation of 42 U.S.C. §1395ff(b), 42 U.S.C. §1395ddd(f)(3), 405 C.F.R. §405. 371, and the MPIM, and he deprives Plaintiff of a meaningful opportunity to dispute and contest the overpayment.

**Count 3 - Violation of the Statutory Limitation on Recoupment**

67.    Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

68.    On July 14, 2010, Defendant issued a notice of the alleged extrapolated $2,229,674.00 Medicare overpayment while withholding the statistical sampling documentation, which denies to the provider its Due Process rights and a meaningful opportunity to dispute and contest the extrapolated overpayment.

69.    Defendant's own adjudications, *see, e.g., Global Home Care, Inc. v. National Government Services*, Docket No. M-11-116, HHS, DAB (Jan. 11, 2011), hold that "[w]ithout this basic documentation, a provider does not have the information and data necessary to mount a Due Process challenge to the statistical validity of the sample, as is its right under CMS Ruling 86-1."

70.    Where Plaintiff is denied its Due Process rights to dispute and contest the extrapolated overpayment, the provider is not extended appeal rights in accordance with

20

42 U.S.C. §1395ff(b), and it also is deprived of the statutory protection against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

71.    Defendant has imposed recoupment of 100% of Plaintiff's Medicare payments to collect the alleged extrapolated $2,229,674.00 overpayment even though the provider has been deprived of a meaningful opportunity to challenge this calculation.

72.    Accordingly, Defendant's imposition of recoupment violates 42 U.S.C. §1395ddd(f)(2) when the statistical sampling documentation is withheld from Plaintiff, and, consequently, the provider is not extended a meaningful opportunity to dispute and contest the extrapolated overpayment in the first two stages of the administrative process.

### Count 4 – Mandamus

73.    Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

74.    The Mandamus Act, 28 U.S.C. §1361, provides that federal district courts shall have jurisdiction over any action in the nature of mandamus, and may compel an officer or employee of the United States or any agency thereof to perform a duty owed to Plaintiff.  However, mandamus may issue only when such plaintiff has a clear right to relief, the defendant a clear duty to act, and no other adequate remedy exists.  In addition, mandamus will lie to correct a clear abuse of discretion.

75.    Further, in *Wolcott v. Sebelius*, 635 F.3d 757, 765 (5th Cir. 2011), the Fifth Circuit held that the Medicare Act "does not preclude mandamus jurisdiction to review

21

otherwise unreviewable procedural issues."

76.    The Medicare Act, 42 U.S.C. §1395ff(b), requires Defendant to properly adjudicate administrative appeals at each stage of the process and affords providers the right to a fair and consistent review.

77.    On July 14, 2010, Defendant issued a notice of the alleged extrapolated $2,229,674.00 Medicare overpayment while withholding the statistical sampling documentation, which denies to the provider its Due Process rights and a meaningful opportunity to dispute and contest the extrapolated overpayment.

78.    Plaintiff has been forced to pursue an administrative appeal for the past five years as it was denied the opportunity to effectively dispute and contest the overpayment at each and every stage of the administrative process because of Defendant's failure to provide the documentation of the sampling methodology.

79.    Defendant's own adjudications, *see, e.g., Global Home Care, Inc. v. National Government Services*, Docket No. M-11-116, HHS, DAB (Jan. 11, 2011), hold that "[w]ithout this basic documentation, a provider does not have the information and data necessary to mount a Due Process challenge to the statistical validity of the sample, as is its right under CMS Ruling 86-1" and the extrapolation cannot stand.  The failure to maintain this documentation, or its absence from the administrative record is grounds for invalidating an extrapolation. *Chaves County Home Health Svcs. Inc. v. Sullivan*, 931 F. 2d 914 (D.C. Cir. 1991), cert. denied, 402 U.S. 1091 (1992).

80.     Defendant fails to properly adjudicate the overpayment appeal when no statistical sampling documentation is produced in violation of 42 U.S.C. §1395ff(b), 42 U.S.C. §1395ddd(f)(3), 405 C.F.R. §405. 371, and the MPIM, and he deprives Plaintiff of a meaningful opportunity to dispute and contest the overpayment.

81.     Accordingly, Plaintiff has a clear right to mandamus relief, Defendant a clear duty to act, and no other adequate remedy exists, and Plaintiff requests emergency mandamus relief to enforce his clear, non-discretionary, duty to dismiss the claim for the extrapolated $2,229,674.00 overpayment, limit recovery to the alleged *actual* overpayment totaling $190,568.35, and to cease recoupment of the extrapolated $2,229,674.00 overpayment amount because the provider was not extended a meaningful opportunity to challenge its calculation in the administrative appeal.

### Count 5 – Declaratory Judgment

82.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

83.     The Medicare Act, 42 U.S.C. §1395ff(b), requires Defendant to properly adjudicate administrative appeals at each stage of the process and affords providers the right to a fair and consistent review.

84.     On July 14, 2010, Defendant issued a notice of the alleged extrapolated $2,229,674.00 Medicare overpayment while withholding the statistical sampling documentation, which denies to the provider its Due Process rights and a meaningful

opportunity to dispute and contest the extrapolated overpayment.

85.    Plaintiff has been forced to pursue an administrative appeal for the past five years as it was denied the opportunity to effectively dispute and contest the overpayment at each and every stage of the administrative process because of Defendant's failure to provide the documentation of the sampling methodology.

86.    Defendant's own adjudications, *see, e.g., Global Home Care, Inc. v. National Government Services*, Docket No. M-11-116, HHS, DAB (Jan. 11, 2011), hold that "[w]ithout this basic documentation, a provider does not have the information and data necessary to mount a Due Process challenge to the statistical validity of the sample, as is its right under CMS Ruling 86-1" and the extrapolation cannot stand.

87.    Where Plaintiff is denied its Due Process rights to dispute and contest the extrapolated overpayment, the provider is not extended appeal rights in accordance with 42 U.S.C. §1395ff(b), and it also is deprived of the statutory protection against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

88.    Defendant has given notice it will impose recoupment of 100% of Plaintiff's Medicare payments to collect the alleged extrapolated $2,229,674.00 overpayment even though the provider has been deprived of a meaningful opportunity to challenge this calculation.

89.    Accordingly, Plaintiff seeks a Declaratory Judgment pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57 that declares the relative rights of Plaintiff

24

upon issuance of the December 13, 2011, notice of the alleged extrapolated
$2,229,674.00  Medicare overpayment where Defendant has failed to produce the
statistical sampling documentation, denied Plaintiff's Due Process rights, and noticed
recoupment of the extrapolated $2,229,674.00 overpayment for which the provider has
essentially been denied appeal rights.

## ATTORNEY FEES & COSTS

90.    Plaintiff is entitled to an award of attorney fees and costs under the Equal
Access to Justice Act, 28 U.S.C. §2412, upon showing the applicant is a "prevailing
party"; a showing that the applicant is "eligible to receive an award"; and a statement of
"the amount sought, including an itemized statement from any attorney . . . stating the
actual time expended and the rate" charged.  The prevailing party is entitled to such
attorney fees unless the government's position was "substantially justified" or special
circumstances make an award unjust.

## PRAYER

91.    For these reasons, Plaintiff asks for judgment against Defendant for the
following:

   a.    Issuance of a writ of mandamus compelling Defendant to properly
         adjudicate the appeal, dismiss the claim for the extrapolated
         $2,229,674.00 overpayment, limit its recovery to the alleged *actual*
         overpayment totaling $190,568.35, and to cease recoupment of the

extrapolated $2,229,674.00 overpayment amount because the

provider was not extended a meaningful opportunity to challenge its

calculation in the administrative appeal.

b.    Declaratory relief.

c.    Reasonable attorney fees.

d.    Court costs.

e.    All other relief the Court deems appropriate.

Respectfully submitted,

KENNEDY
Attorneys and Counselors at Law

/s/    Mark S. Kennedy

_____
MARK S. KENNEDY
Attorney-In-Charge
S.D. Tex. Admission No. 435115
Texas Bar No.  24000122
12222 Merit Drive, Suite 1750
Dallas, TX 75251
voice: (214) 445-0740
fax: (972) 661-9320
markskennedylaw@msn.com

**ATTORNEYS FOR PLAINTIFF**